IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUONADONNA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SOUTHEAST DELCO SCHOOL DISTRICT, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br> NO. 14-02708 |

**MEMORANDUM**

**PAPPERT, J.**                                                                                                  **March 2, 2015**

      Defendants Southeast Delco School District ("School District"), Delaware County Intermediate Unit ("DCIU"), and Hykeem Green ("Green") have filed separate motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint filed by Plaintiffs C.J. Buonadonna ("Buonadonna") and Dylan Fonner ("Fonner"). For the reasons stated below, the Court will grant Defendants' motions and allow Plaintiffs leave to amend the complaint.

**Background**

      Buonadonna and Fonner (collectively "Plaintiffs") were students at The County Alternative High School ("TCA"), an alternative school operated by DCIU. DCIU is a state-created educational services agency that services the fifteen school districts of Delaware County, Pennsylvania, including Defendant School District, wherein TCA is located. (DCIU Mot. to Dismiss 2.)[1]

---

[1] As many of the parties' motion papers lack pagination, all citations to pagination in this memorandum will refer to ECF page numbers.

On October 9, 2013, Plaintiffs were targets of teasing and bullying at TCA. (Compl. ¶ 14.) That afternoon, Plaintiffs boarded a school bus with three of the students who had been harassing them.[2] (*Id*. ¶¶ 15, 20.) Green, an employee of the School District and DCIU, drove the bus.[3] (*Id*. ¶¶ 16-17.) The School District and DCIU allegedly knew that Green had a criminal record for assault and false imprisonment and that he had prior traffic infractions. (*Id*. ¶¶ 18-19.)

During the trip, the three other students confronted Plaintiffs, who were sitting at the front of the bus "approximately 6 feet or less from Defendant Green." (Compl. ¶¶ 20-22.) At one point, the students called Plaintiffs racist and impliedly threatened them. (*Id*. ¶¶ 20-21.) Green responded to the taunt by telling the students, "Yo, leave him alone man for real." (*Id*. ¶ 23.) Notwithstanding Green's admonition, one of the students punched Fonner in the face four times. (*Id*. ¶ 24.)

Fonner stood up and confronted the student, accusing him of a hate crime and threatening to report the incident. (Compl. ¶ 25.) The student cursed at Fonner in response. (*Id*.) Green again interjected, stating, "[y]ou all gotta sit down man." (*Id*. ¶ 26.) Nonetheless, a second student punched Fonner, knocking him into Buonadonna. (*Id*. ¶ 27.)

---

[2] The complaint alleges that three students who bullied Plaintiffs boarded the bus, but does not indicate how many students in total had been harassing Plaintiffs at school that day. (Compl. ¶¶ 14-15, 20.) In their responses to the Defendants' motions to dismiss, Plaintiffs argued that only two bullies boarded the school bus. (Pls.' Opp'n to Sch. Dist. Mot. to Dismiss 2-3; Pls.' Opp'n to DCIU Mot. to Dismiss 5-6; Pls.' Opp'n to Green Mot. to Dismiss 2-3.)

[3] Plaintiffs admit in their brief in opposition to DCIU's motion to dismiss that Green was not employed by DCIU, but rather was an employee of the School District only. (Pls.' Opp'n to DCIU Mot. to Dismiss 7.) At oral argument, Plaintiffs contended that while Green may not technically have been an employee of DCIU, it is unclear whether he maintained some relationship with DCIU. For the purposes of a motion to dismiss, the Court must accept as true all allegations in the complaint, even if doubtful in fact. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While the Court will proceed under the assumption that Green was an employee of both the School District and DCIU, Plaintiffs should confirm and clarify, if possible, their allegations regarding Green's relationship to DCIU and the School District in the amended complaint.

Fonner asked Green to let him off the bus, but Green replied, "I can't let you off the bus man." (Compl. ¶¶ 28-29.)  Fonner then told Green, "I'll call my mom if you don't let us off the bus." (*Id.* ¶ 31.)  Green "still refused" to let Plaintiffs off the bus. (*Id.*)  The other students cheered Green's refusal. (*Id.* ¶ 32.)  Plaintiffs allege that the students "continued to threaten and batter" them until the bus reached Buonadonna's residence, at which point Green allowed Plaintiffs off the bus. (*Id.* ¶¶ 33, 35.)  Green was "aware that both boys were injured and bleeding," but did nothing to help them off the bus. (*Id.* ¶ 36.)  Plaintiffs allege that Defendants never reported this incident to authorities, and that Green was never disciplined as a result of this incident. (Compl. ¶¶ 34, 37-38.)

Plaintiffs contend that the School District and DCIU "failed to train defendant Green regarding what actions to take during a student assault on a school bus" and that they "had a policy to keep children on a school bus until their assigned stops even while students were being battered, and facing an immediate threat of continued danger to life and liberty." (Compl. ¶¶39-40.)

Plaintiffs bring a failure to train, supervise, and discipline claim against the School District and DCIU (Count I); a due process claim for false imprisonment and failure to intervene against Green (Count II); a claim for intentional infliction of emotional distress against Green (Count III); a state created danger claim against all Defendants (Count IV); and a claim for loss of consortium against all Defendants (Count V).[4]  (Compl. ¶¶ 45-67.)  The School District,

---

[4]  Defendants argued in their motions to dismiss that Plaintiffs cannot maintain a loss of consortium claim because Pennsylvania does not recognize filial loss of consortium. (DCIU Mem. in Supp. of Mot. to Dismiss 9-11; Sch. Dist. Mem. in Supp. of Mot. to Dismiss 15; Green Mem. in Supp. of Mot. to Dismiss 18); *see also Quinn v. City of Pittsburgh*, 90 A. 353, 354 (Pa. 1914) ("The right to recover for loss of companionship is confined to cases where a husband sues for injuries to his wife."); *Tuman v. Genesis Assocs.*, 894 F. Supp. 183, 189-90 (E.D. Pa. 1995) ("Pennsylvania's courts have consistently refused to recognize a parent's direct cause of action for loss of filial consortium caused by the interference of a third party.") (citations omitted).  Plaintiffs concede in their response briefs that Count V should be dismissed against all Defendants. (Pls.' Opp'n to DCIU Mot. to Dismiss 8; Pls.' Opp'n to Sch. Dist. Mot. to Dismiss

DCIU, and Green each filed motions to dismiss, (ECF Nos. 6, 10, 21), Plaintiffs have filed responses, (ECF Nos. 7, 11, 22), and the School District and DCIU filed replies. (ECF Nos. 14, 19.) The Court held oral argument on Defendants' motions on February 20, 2015. (ECF No. 24.)

**Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (quotation and citation omitted).

The court must construe the complaint in the light most favorable to the plaintiff. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Iqbal,* 556 U.S. at 678. A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.,* 361 F.3d 217, 221 n.3 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557.

---

13; Pls.' Opp'n to Green Mot. to Dismiss 15.) At oral argument, Plaintiffs agreed to the dismissal of Count V with prejudice. The Court will therefore not consider Plaintiffs' loss of filial consortium claim any further and Count V against all Defendants is dismissed with prejudice.

**Discussion**

### I. Failure to Train, Supervise and Discipline under *Monell* Against the School District and DCIU (Count I)

A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691 (1978). For liability to attach under § 1983, the municipality *itself* must cause the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Plaintiffs must demonstrate that the violation of their rights was caused by a policy, custom or practice of the municipality. *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996). "Failure to" claims—failure to train, failure to supervise, or failure to discipline—are generally considered a subcategory of municipal policy or practice liability. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).

Where a plaintiff alleges that the municipal policy that caused the injury in question concerned a failure to train, supervise, or discipline,[5] the plaintiff must demonstrate that (1) the failure amounted to a deliberate indifference to the rights of persons with whom the municipal employee comes in contact; and (2) the municipality's policy of failing to train, supervise, or discipline actually caused the constitutional injury. *City of Canton,* 489 U.S. at 388; *Montgomery v. De Simone,* 159 F.3d 120, 126-27 (3d Cir. 1998). The failures Plaintiffs allege here are that the School District and DCIU "failed to train defendant Green regarding what

---

[5] The parties dispute whether the federal courts recognize failure to discipline claims under § 1983. (Sch. Dist. Mem. in Supp. of Mot. to Dismiss 9, n.2; Pls.' Opp'n to Sch. Dist. Mot. to Dismiss 6, n.4.) A review of case law demonstrates that various courts in this Circuit have done so. *See, e.g., Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997); *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 643 (E.D. Pa. 2014); *Briscoe v. Jackson*, 2 F. Supp. 3d 635, 646 (E.D. Pa. 2014); *Bell v. City of Philadelphia*, 511 F. Supp. 1156, 1164 (E.D. Pa. 1981). Thus, the Court will proceed to consider Plaintiffs' failure to train, supervise, and discipline claim in its entirety under *Monell*.

actions to take during a student assault on a school bus," and "failed to train employees regarding what actions to be taken if an emergency occurred on its bus." (Compl. ¶¶ 39, 41.)

### A.     *Deliberate Indifference*

Failure to adequately train, supervise, or discipline municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-09 (1997). Although it is possible to maintain a claim of failure to train without demonstrating such a pattern, *Bryan County* makes clear that the plaintiff's burden in such a case is high. *Id*. at 409 ("In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations"); *accord Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) ("[A] municipal policy or custom that amounts to deliberate indifference . . . . typically requires proof of a pattern of underlying constitutional violations. Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task.") (citations omitted). Without a pattern of past violations, a plaintiff has to "show both contemporaneous knowledge of the offending incident . . . and circumstances under which [a municipal] supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery*, 159 F.3d at 127 (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)).

Plaintiffs do not specify whether their *Monell* claim is brought under a 'pattern of violations' theory or a 'single violation' theory, but Plaintiffs fail to adequately plead deliberate indifference using either approach. First, the complaint does not allege that the School District

6

or DCIU were aware of similar acts of student-on-student violence during bus trips.  The closest Plaintiffs come to such an allegation is, "similar incidents had occurred in the past involving criminal acts engaged in by Green either during or before the scope of his employment." (Compl. ¶ 48.)  The relevant question, however, is not whether Green engaged in violence, but whether other students did.  As the complaint is devoid of any facts showing the School District's or DCIU's knowledge of a pattern of student-on-student violence during bus trips, Plaintiffs cannot allege that the School District and DCIU were deliberately indifferent to such a risk.

Second, under a single violation theory, the complaint fails to allege any action or inaction by the School District or DCIU that could be interpreted as encouraging Green's alleged offensive behavior.  Plaintiffs never identify any examples of specific training that the School District or DCIU failed to provide, nor do they explain any shortcomings in the School District's or DCIU's supervision or disciplinary policies vis-à-vis Green.  Plaintiffs' allegation that Green was never disciplined after the incident on October 9, 2013 misses the mark.  Under *Monell*, the School District's and DCIU's alleged failure to discipline has to be the "moving force" behind the deprivation of Plaintiffs' constitutional rights.  *City of Canton*, 489 U.S. at 389.  Here, Plaintiffs appear to allege that the School District and DCIU failed to discipline Green *after* the alleged wrongdoing, not before.  Any subsequent discipline the School District or DCIU imposed upon Green is irrelevant to the analysis of Plaintiffs' *Monell* claim.

Whether analyzed under a pattern of violations or single violation theory, the complaint fails to sufficiently allege that the School District and DCIU acted with the deliberate

indifference necessary to sustain a claim for municipal liability. Count I will be dismissed without prejudice.[6]

## II. Violation of Substantive Due Process under State-Created Danger Theory Against All Defendants (Counts II and IV)

Although Plaintiffs appear to have separated their claim for violation of due process into two separate counts, a fair reading of the complaint and applicable case law dictates that Counts II and IV be read together as Plaintiffs pleading a state-created danger claim against all three Defendants.[7]

At oral argument, Plaintiffs maintained that they are pleading failure to intervene and false imprisonment under § 1983 against Green in Count II. Given the facts as pled in the complaint, such claims cannot stand as a matter of law. First, the Third Circuit has imposed liability for a non-supervisory government employee's failure to intervene only in matters concerning correctional and police officers. *See Smith v. Messinger*, 293 F.3d 641, 650 (3d Cir. 2002). In such failure to intervene cases, the "beating" requiring intervention comes at the hand of other government actors. *Id.* at 650-52. That is not the case here, where the attack on Plaintiffs came from independent third parties. A plaintiff generally cannot hold the state liable for failing to protect him or her from the violent acts of private individuals. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997). An exception to this rule exists when the

---

[6] As analysis of the first element (deliberate indifference) is dispositive to Count I, the Court need not reach the second element (causation).

[7] Plaintiffs do not articulate what exact constitutional violation(s) they suffered in Counts II and IV, apart from the references in Count II's title to "Due Process under the Fourteenth Amendment" and "Liberty." *See also* (Compl. ¶ 8) (stating that this action arises under the Due Process Clause of the Fourteenth Amendment). The Court assumes the constitutional violation at issue here is the same as alleged in other state-created danger cases: an individual's substantive due process right to bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994). Plaintiffs' response to Green's Motion to Dismiss appears to confirm this assumption. (Pls.' Opp'n to Green Mot. to Dismiss 9) (arguing that the "Fourteenth amendment creates a liberty interest in bodily integrity" in relation to state-created dangers).

state created the danger. *Id*. This is the essence of Plaintiffs' claim in Count II, and why it is properly read together with Count IV.

Likewise, the Third Circuit has recognized § 1983 claims for false imprisonment, but only in the context of unlawful arrests or detentions at the hands of law enforcement. *See, e.g., Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law. . . . where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures.") (citations omitted). Again, this is not the case here, where Plaintiffs' alleged false imprisonment came at the hands of a school bus driver not incident to any arrest. Indeed, the Supreme Court has warned against confusing constitutional and tort law in this area. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as medical malpractice does not become a constitutional violation merely because the victim is a prisoner, false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.") (citation and quotation omitted). Thus, while Plaintiffs may be able to state a tort claim against Green for false imprisonment, they cannot as a matter of law do so under § 1983.

### A. *State-Created Danger Theory Against Green*

In general, the state owes no affirmative duty to protect citizens from the tortious acts of private individuals. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 195-96 (1989). An exception to that general rule applies when the state itself is alleged to have created the danger to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

To establish a viable claim under the state-created danger theory, the Plaintiffs must show:

> (1) the harm ultimately caused to the Plaintiffs was foreseeable and fairly direct;
>
> (2) the state actor acted in willful disregard for the Plaintiffs' safety;
>
> (3) there existed some relationship between the state and the Plaintiffs; and
>
> (4) the state actor used his authority to create an opportunity for danger that otherwise would not have existed.

*Id.* (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Plaintiffs plead a claim under the state-created danger theory, alleging that the "defendants placed plaintiffs in harms [sic] way when their actions created and exacerbated a danger to the plaintiffs by affirmatively preventing Plaintiffs' [sic] Fonner and Buonadonna from reaching an area of safety where Plaintiff Fonner could have safely called his mother to intervene. The intent and/or deliberate indifference and/or negligence by the Defendants created the danger of the plaintiffs' subsequent battery and injuries, and heightened plaintiffs' vulnerabilities to precisely the abuses and violations described above." (Compl. ¶¶ 56-57.) The gist of Plaintiffs' claim here seems to be that Green violated Plaintiffs' constitutional right to bodily integrity because Green did not allow the Plaintiffs to get off the bus until their assigned stop, despite the ongoing confrontation Plaintiffs were having with other students on the bus.

Accepting the allegations in the complaint as true, Plaintiffs fail to sufficiently allege the elements of the state-created danger test. Specifically, Plaintiffs fail to demonstrate the last prong, *i.e.*, how Green used his authority to create an opportunity for danger that otherwise would not have existed. The Third Circuit has stressed that "under the fourth element of a state-created danger claim, liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." *Bright*, 443 F.3d at 282 (emphasis in original) (quotation and citations omitted). It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause. *Id.*

In Plaintiffs' responses to Defendants' motions to dismiss, Plaintiffs itemize the fight on the bus into three separate assaults. (Pls.' Opp'n to Sch. Dist. Mot. to Dismiss 7; Pls.' Opp'n to Green Mot. to Dismiss 11.) Plaintiffs then point to Green's failure to let Plaintiffs off the bus between the second and third assaults as the unconstitutional affirmative act "that is the true driving force behind what gives rise to this action." (Pls.' Opp'n to Green Mot. to Dismiss 11.) Plaintiffs' counsel reiterated this contention, that Green's "inaction" constituted the necessary affirmative act, at oral argument. This reasoning is incorrect. Plaintiffs are attempting to do exactly what Third Circuit precedent does not allow—they are attempting to "redefine clearly passive inaction as affirmative acts." *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013) (en banc), *cert. denied*, 134 S. Ct. 824 (2013). While it is possible that Green's failure to let Plaintiffs off the bus allowed their confrontation with the other students to continue, Green did not affirmatively use his authority to create the confrontation in the first place. "[N]onfeasance . . . do[es] not rise to the level of a constitutional violation." *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1376 (3d Cir. 1992); *accord Morrow*, 719 F.3d at 178-79 ("[T]he only reasonable interpretation . . . is that the Defendants

11

*failed* to take any affirmative steps to ensure that Anderson did not board the Morrow children's bus. Here again, the Complaint attempts to morph passive inaction into affirmative acts. However, merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct.") (emphasis in original).

Nor does it matter, as Plaintiffs contended at oral argument, that Green personally witnessed the fight between Plaintiffs and the bullies. The Third Circuit has explained that such personal knowledge does not change the state-created danger analysis under Supreme Court precedent. *See Bright*, 443 F.3d at 284 ("[W]e know from *DeShaney* that no affirmative duty to protect arises 'from the State's knowledge of the individual's predicament.' Liability requires affirmative state action; mere 'failure to protect an individual against private violence' does not violate the Due Process Clause.") (citing *DeShaney,* 489 U.S. at 197, 200).

In sum, Green did not take any affirmative action that put the Plaintiffs in any greater danger. This lack of affirmative action is fatal to Plaintiffs' state-created danger claim. Counts II and IV are dismissed against Green without prejudice.

### B. *State-Created Danger Theory Against the School District and DCIU*

In Count IV, Plaintiffs also plead the state-created danger theory against the School District and DCIU. Third Circuit precedent requires the district court to review a plaintiff's municipal liability claim independently of his or her § 1983 claims against the individual state actors. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). While the Third Circuit has stated that it "is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable," for there to be municipal liability, "there still must be a violation of the plaintiff's constitutional rights." *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst*., 318 F.3d 473, 482 (3d Cir. 2003)

(citations omitted). There must be a direct causal link between some municipal policy and a constitutional violation. *Id*. (citing *City of Canton,* 489 U.S. at 385); *accord Reiff v. Marks*, 511 F. App'x 220, 223 (3d Cir. 2013) ("[A] municipality may not be held liable on a failure to train theory when a jury has found that the plaintiff has suffered no constitutional violation.") (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) involved various constitutional claims brought against both the Borough of Kutztown and its mayor, including substantive due process claims under § 1983. The Third Circuit dismissed Hill's substantive due process claim against the Borough upon dismissal of the same against the mayor. *Id*. The Court stated that "[t]here cannot be an award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." *Id*. (citing *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003)) (quotation omitted). Absent any liability on the part of its employees, a municipal liability claim can only stand where a municipal action itself caused the injury. *Grazier*, 328 F.3d at 124 (observing that a city "may be held liable if its policy actually causes injury") (citing *City of Canton,* 489 U.S. at 390).

Stripping away the threadbare recitals and mere conclusory allegations in the complaint as we must, *Iqbal*, 556 U.S. at 678, Plaintiffs fail to state a claim for state-created danger against the School District and DCIU. A careful reading of the complaint reveals only three relevant actions that Plaintiffs attribute directly to the municipal defendants:

> Defendant District and DCIU failed to train defendant Green regarding what actions to take during a student assault on a school bus.
>
> Defendant District and DCIU had a policy to keep children on a school bus until their assigned stops even while students were

13

>being battered, and facing an immediate threat of continued danger to life and liberty.
>
>Defendant District and DCIU failed to train employees regarding what actions to be taken if an emergency occurred on its bus.

(Compl. ¶¶ 39-41.) As discussed in Part I, *supra*, the complaint fails to state a municipal liability claim for "failure to train" because Plaintiffs have not adequately pled deliberate indifference to raise its allegations "above the speculative level." *Twombly,* 550 U.S. at 555-56. Likewise, with regard to the School District's and DCIU's alleged "policy to keep children on a school bus until their assigned stops even while students were being battered," the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Plaintiffs provided no factual support in their complaint for their assertion that the School District and DCIU had a policy, custom, or practice of keeping children on school buses while being battered. Plaintiffs do not even allege that similar acts of student-on-student violence during bus trips had occurred before this incident.

Because Plaintiffs' complaint does not sufficiently allege a municipal policy or custom that directly caused Plaintiffs' injuries, Plaintiffs have failed to state a claim for state-created danger against the School District and DCIU. Count IV is dismissed against the School District and DCIU without prejudice.

### III. State Law Claim for Intentional Infliction of Emotional Distress Against Green (Count III)

Because all of Plaintiffs' federal claims against Defendants must be dismissed as currently pled, and those federal claims are the sole basis for Plaintiffs' assertion of this Court's jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claim against Green at this time. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims

over which it has original jurisdiction . . . .").  Plaintiffs' claim for intentional infliction of emotional distress (Count III) against Green therefore is dismissed without prejudice.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are granted.  Count V for loss of filial consortium is dismissed with prejudice.  The remainder of Plaintiffs' complaint is dismissed without prejudice.  Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)); *accord Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").  Since the Court cannot conclude at this stage that amending the complaint would be either inequitable or futile, Plaintiffs may file an amended complaint no later than March 23, 2015.

An appropriate order follows.

                                                       */s/ Gerald J. Pappert*
                                                       GERALD J. PAPPERT, J.